IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**MAHMOUD IBRAHIM,**

Petitioner,

v.

**MARK HOOKS,**

Respondent.

Case No. 1:17 CV 264

Chief Judge Patricia A. Gaughan

Magistrate Judge James R. Knepp, II

REPORT AND RECOMMENDATION

## INTRODUCTION

Petitioner Mahmoud Ibrahim ("Petitioner"), a prisoner in state custody, filed a counseled Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent Mark Hooks, Warden of the Ross Correctional Institution ("Respondent") filed an Answer / Return of Writ (Doc. 6) and Petitioner filed a Reply / Traverse (Doc. 8). [1] The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated February 9, 2017). For the reasons discussed below, the undersigned recommends the Petition be denied.

## FACTUAL BACKGROUND

For the purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, erroneous factual findings by the state court. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524,

---

1. Parties and courts commonly use the terms "Return of Writ" and "Traverse" to refer to what the Rules Governing Section 2254 Cases now term an "Answer" and "Reply". *See* Rule 5 of the Rules Governing Section 2254 Cases.

530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state

court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Eighth

District Court of Appeals set forth the following facts on direct appeal:

> {¶ 2} The child victim, I.S., was born in 2001. His parents were separated in 2004
> and divorced in 2005. After his parents' separation, I.S., along with his two older
> brothers, lived with his mother, and his father lived with his own family in an
> extended household that included I.S.'s father's brother, the brother's wife, I.S.'s
> paternal grandfather (appellant Ibrahim), Ibrahim's wife, and several others. I.S.,
> along with his two brothers, would visit their father every Sunday.

> {¶ 3} I.S.'s father moved out of the shared home when I.S. was around eight and
> the visits to the home stopped. In February 2013, while I.S. and his mother were
> watching a TV show about child molestations, I.S. became emotional and revealed
> to his mother he had been abused by his grandfather. A few weeks later after the
> revelation, I.S.'s mother went to the North Olmsted police to report the sexual
> abuse.

> {¶ 4} The grand jury subsequently indicted Ibrahim on four counts of rape and three
> counts of kidnapping. The first, third, fourth, and sixth counts charged him with
> rape in violation of R.C. 2907.02(A)(1)(b); each count has a furthermore clause that
> the victim was less than ten years of age. The second, fifth, and seventh counts
> charged him with kidnapping with a sexual motivation specification. The matter
> went to a jury trial.

> ### Trial Testimony

> {¶ 5} The state's key witness was the victim himself, 13 at the time of the trial. He
> testified that, on multiple occasions, when he was at his father's house, his
> grandfather, whom he called Cito, took him to a downstairs bathroom, pulled down
> his (I.S.'s) pants, and "put his pee-pee in my buttock."

> {¶ 6} I.S. recalled the first such incident happened during the spring break of his
> kindergarten year. I.S. was 6 years old at the time. He was playing video games
> with his brothers in the downstairs family room. His grandfather came down to ask
> him if he needed to go to the bathroom. He said no, but his grandfather said "come
> on, let's just try." His grandfather picked him up, took him to the bathroom, had
> him stand on the toilet, pulled down his (I .S.'s) pants, and put his "private part in
> my butt." When finished, his grandfather pulled up his own pants and walked out.
> I.S. himself got off the toilet and washed his hands. He did not tell anyone because
> he thought "it was normal." I.S. estimated they were in the bathroom for two
> minutes. I.S. also testified that, before this incident, his grandfather used to take
> showers with him.

{¶ 7} I.S. recalled a second incident in the summer before he started first grade. His grandfather again came downstairs to ask him if he needed to use the bathroom. He said no because he had just gone. His grandfather said "let's try" and took him to the bathroom. I.S. testified that on this occasion his grandfather positioned him standing on the toilet and facing the shower while he (his grandfather) knelt. In I.S.'s words, his grandfather "put his breath on my pee-pee" for about fifteen seconds.

{¶ 8} The third incident I.S. recalled happened in a morning before the winter break of his first grade. His grandfather again took him to the bathroom and put his private part in I.S.'s buttock. He remembered his grandfather went to get Dunkin' Donuts for the boys afterward. He also remembered seeing his father plowing the snow on the driveway that morning.

{¶ 9} The last incident of sexual abuse that I.S. recalled occurred around the time his father was moving out of the shared household. On that occasion, I.S.'s cousins came over for a religious holiday. When they were playing video games, his grandfather came downstairs and asked him if he needed to go to the bathroom. He said no and started to kick. His grandfather took him into the bathroom, pulled his (I.S.'s) pants down, and put his private part in I.S.'s buttock. I.S. testified that he told his mother about the sexual abuse in February 2013 when they were watching a TV show.

{¶ 10} I.S. gave varying information during the police investigation and at trial about the number of times and the period of time the sexual abuse occurred. He apparently told the police it occurred ten times, but on cross-examination he stated it happened every time he stayed at his father's household. He told the police the abuse started when he was eight, but he testified at trial that the first incident occurred when he was in kindergarten, when he was six or seven. On cross-examination, he stated the abuse took place "a couple of years" before he revealed the abuse to his mother, when his testimony on direct examination placed the abuse at an earlier period of time.

{¶ 11} In addition to I.S., other witnesses testifying for the state included I.S.'s mother, I.S.'s maternal grandmother, two police officers from the North Olmsted police department, a social worker from the county children services, and a social worker from The Nord Center.

{¶ 12} I.S.'s mother testified that I.S.'s father began residing at his family's extended household after the couple separated in 2004, when I.S. was three or four. I.S. and his brothers would spend weekends at his father's residence. In 2007, I .S. started kindergarten when he was six.

{¶ 13} I.S.'s mother testified that, one day in February, she and I.S. were watching a documentary on TV about a Red Sox coach molesting boys. She noticed I.S.'s face became flushed, and he started to rock back and forth. She paused the show

3

and asked I.S. if something was bothering him. She told him if somebody did something to him, she would believe him. I.S. initially said nothing, but 20 minutes later, he told her that "Cito"—referring to Ibrahim—put his (I.S.'s) penis in his ("Cito's") mouth. I.S.'s mother, sick to the stomach, asked him if he cried, if Cito told I.S. not to tell anyone, and if Cito did it to I.S.'s brothers. She then called I.S.'s father regarding the revelation. I.S.'s father came over the next day. He wanted I.S. to get help, but did not want anything to happen to his father because his father was in poor health. She went to the police a week later. She also took I.S. to The Nord Center for counseling.

{¶ 14} I.S.'s mother also testified that, toward the end of the time when I.S. went for the weekend visitation with his father, I.S. would cry, scream, hyperventilate, and become nauseous. When she inquired, however, I.S. would say nothing.

{¶ 15} The defense's theory was that I.S.'s mother concocted the story of sexual abuse because of the acrimonious divorce and custody battle. On cross-examination, I.S.'s mother acknowledged that she sent a text on February 12, 2013, to I.S.'s father asking him to give up custody of the children. The text said "we can do this the nice way or the ugly way." The text was sent two weeks before March 1, 2013, the day she went to the North Olmsted police department and reported the molestation. When confronted with her text message on cross-examination, I.S.'s mother explained that, by "the ugly way," she meant getting a lawyer involved.

{¶ 16} I.S.'s maternal grandmother testified that she remembered I.S. reacted negatively before going to his father's residence for visitations. He would cover his eyes and cry violently.

{¶ 17} Sergeant Eric Morgan of the North Olmsted police department testified that on March 1, 2013, I.S.'s mother came to the police station to report that her son had been molested. She told him they were watching a TV show about molestation and I.S. started to act funny and eventually told her about being molested by his grandfather. Sergeant Morgan asked I.S. how often it occurred when he visited his grandfather's residence, and I.S. said "every time." During the police interview, I.S. was crying and shaking, and his mother appeared to be stunned with the revelation.

{¶ 18} Detective Kenneth Vagase, a sex crime specialist of the North Olmsted police department, testified he was trained in dealing with child victims of sex offenses. He worked with social worker Rob Wilczewski of Lorain County Children and Family Services in this case. After I.S.'s mother made the report, Wilczewski interviewed I.S. while Detective Vagase observed the interview from a separate room. Detective Vagase and Wilczewski together conducted a second interview of I.S. During that interview, I.S. broke down and cried. Detective Vagase later obtained I.S.'s medical records from his pediatrician. Nothing from the medical records, however, indicated the existence of anal penetration. Detective Vagase testified that, in his experience, the further removed in time the medical

4

exam was conducted from the abuse, the less likely the medical exam would yield any evidence of abuse.

{¶ 19} Wilczewski, who was trained in interviewing child victims of sexual abuse, testified that I.S. related that the abuse occurred when he was about seven or eight years old. I.S. told him his grandfather would separate him from other members of the family, take him into the downstairs bathroom, pull his pants down, and anally penetrate him. I.S. recalled ten such instances. I.S. also recalled five instances where his grandfather performed oral sex on him.

{¶ 20} Wilczewski testified that there are three types of case dispositions his agency would make after an investigation of alleged abuse: "substantiated," "indicated," or "unsubstantiated." In this case, the disposition of the sexual abuse allegation after the initial interview of I.S. was that sexual abuse was "indicated." Wilczewski testified that during the second interview, where he and Detective Vagase were both present, I .S. was visibly emotional, crying when elaborating on what happened to him. Based on his assessment that I.S. exhibited indications of post traumatic stress disorder ("PTSD") because of the victimization, his agency referred I.S. for mental health counseling services. He testified that he did not believe other factors in I.S.'s home or school environment would have contributed to his exhibition of PTSD symptoms.

{¶ 21} Melissa Wheeler, an independent licensed social worker with a supervisory designation, was the supervisor for the child and adolescence services at The Nord Center. She testified that she treated I.S. for a diagnosis of PTSD from "reported past sexual abuse." She explained that the disorder described someone who witnessed or experienced a traumatic event that caused significant fear and hopelessness. Such a person would also exhibit symptoms of decreased or lack of ability to sleep, nightmares, flashbacks, attention issues, hypervigilance, and exaggerated startled responses. She testified that I.S. exhibited all these symptoms. I.S. eventually related to her that he was having chronic visions of past sexual abuse. I.S. told her his grandfather "put his pee-pee in his butt" on several occasions when he was staying at his house. His grandfather would ask him if he needed to go to the bathroom when he was watching TV. I.S. would say no but on many occasions his grandfather would pick him up and take him into the bathroom and rape him. Initially, when I.S. talked about these events he would look like he had a panic attack—changing his positions from sitting to standing, or pacing; his breathing would increase; his face would turn flush; sometimes he would weep. In her understanding, the abuses occurred between the ages of five to nine. She testified that a delayed disclosure of abuse was not uncommon. In her experience, there was often no physical evidence of sexual assault years after the assault.

{¶ 22} Wheeler also testified that I.S. related to her he had nightmares of the sexual abuse occurring again and, in those nightmares, his grandfather tried to kill him or was telling him to kill himself. Wheeler treated I.S. by applying a trauma-focused

cognitive behavioral therapy model. I.S. responded well to the therapy and made huge process. The approaching trial, however, caused him significant anxiety.

{¶ 23} Wheeler was asked about factors in I.S.'s environment that could have caused his emotional issues, such as the abuse of his mother by her boyfriend, the drug use by his mother and her boyfriend, his mother's mental health, or the problems he was experiencing at school. Wheeler stated that these issues were not presented by I.S. as most troubling to him in the therapy sessions.

### *Defense*

{¶ 24} The defense's theory was that the sexual abuse allegation was spawned from a bitter divorce and custody battle between I.S.'s parents. Much of the testimony presented by the defense pertained to the troublesome relationship of the parents.

{¶ 25} I.S.'s father's second wife testified that after she and I.S.'s father married in April 2007, they lived in a shared household with I.S.'s father's family until November 2008. There were eight adults living in the home. She testified to the strife between her husband and I.S.'s mother; on one occasion, I.S.'s mother showed up at the door past midnight with a knife. She described Ibrahim as loving and caring, someone whom everybody gravitated toward. She never saw or heard any suspicious activities.

{¶ 26} I.S.'s father testified to the rocky relationship between I.S.'s mother and him and that children's services had been called on several occasions regarding their children. In addition, he testified there was little privacy in the shared home because there were eight adults residing there. He also testified that his father managed a social club, working seven days a week and often coming home very late. He learned about the accusation of sexual abuse two weeks before his ex-wife went to the police.

*State v. Ibrahim*, 2015 WL 4979400 (Ohio Ct. App.).

### PROCEDURAL HISTORY

<u>State Court Conviction</u>

In April 2013, a Cuyahoga County Grand Jury indicted Petitioner on four counts of rape of a victim less than 10 years of age (Ohio Rev. Code § 2907.02(A)(1)(b)) (Counts 1, 3, 4, 6), and three counts of kidnapping (Ohio Rev. Code § 2085.01(A)(4)) (Counts 2, 5, 7) with a sexual motivation specification. (Ex. 1, Doc. 6-1, at 3-6). Petitioner pleaded not guilty. (Ex. 2, Doc. 6-1, at 7).

6

The case proceeded to trial. Petitioner moved for acquittal twice, which the court denied. *See* Ex. 3, Doc. 6-1, at 8-9. The jury found Petitioner guilty as charged on all counts. (Ex. 4, Doc. 6-1, at 10-11). At sentencing, the trial court merged the kidnapping charges with the rape charges and sentenced Petitioner to fifteen years to life in prison on each rape charge, all to be served concurrently. (Ex. 5, Doc. 6-1, at 12-13).[2]

Direct Appeal

Petitioner filed a timely appeal with the Ohio Eighth District Court of Appeals. (Ex. 8, Doc. 6-1, at 18). Petitioner raised four assignments of error:

1. The evidence is insufficient to establish the appellant's guilty [sic] within the time frame found by the grand jury.

2. The trial court erred by allowing a witness to testify as to matters irrelevant to the issue of guilt or non-guilt.

3. Defense counsel's failure to object to unfairly prejudicial evidence deprived the appellant of his right to the effective assistance of counsel.

4. The verdicts are against the weight of he [sic] evidence.

(Ex. 9, Doc. 6-1, at 30). The State filed a brief in response (Ex. 10, Doc. 6-1, at 61-79), and Petitioner replied (Ex. 11, Doc. 6-1, at 80-89). On August 20, 2015, the appellate court affirmed the judgment of the trial court. (Ex. 12, Doc. 6-1, at 90-114); *Ibrahim*, 2015 WL 4979400.

Petitioner, through counsel, filed an appeal to the Ohio Supreme Court. (Ex. 13, Doc. 6-1, at 115-16). In his memorandum in support of jurisdiction, he asserted three propositions of law:

1. Due process requires that a defendant face the same charges base [sic] upon the same facts that formed the basis for the grand jury's indictment. While it is understood that in an allegation against a minor some leeway exists as to exact dates of each offense, due process is violated where the testimony of trial

---

2. The court later issued two *nunc pro tunc* journal entries to reflect: 1) Petitioner was to be designated a Tier III sex offender (Ex. 6, Doc. 6-1, at 14); and 2) Petitioner was indigent and would be appointed counsel on appeal. (Ex. 7, Doc. 6-1, at 16).

alleges that the offenses occurred years different from the dates specified in the indictment.

2. The introduction of victim-impact evidence is generally prohibited during the determination of a defendant's guilt or non-guilt. The reason for this rule is that such evidence tends to unfairly raise the antipathy of the jury towards the defendant. This might allow the jury to improperly base its verdict on considerations other than the acts constituting the offense charged.

3. The failure of defense counsel to object to unfairly prejudicial hearsay evidence which allowed the jury to consider normally inadmissible evidence as substantive evidence constitutes ineffective assistance of counsel.

(Ex. 14, Doc. 6-1, at 118). The State opposed (Ex. 15, Doc. 6-1, at 160-74), and on February 10, 2016, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to Supreme Court Practice Rule 7.08(B)(4), (Ex. 16, Doc. 6-1, at 175).

### FEDERAL HABEAS CORPUS

In February 2017, Petitioner timely filed the instant Petition. (Doc. 1). In it, he raises three grounds for relief:

**1. Sufficiency of the Evidence**

The evidence was insufficient to establish that the charge [sic] offenses occurred during the dates set forth in the indictment. There was no evidence that any of the charges transpired in a manner or time similar to that presented to the grand jury

**2. Confrontation Clause Violation**

The state violated the Confrontation Clause of the United States by allowing the jury to consider evidence that the alleged victim had been diagnosed with post traumatic stress disorder as the result of being a victim of sexual abuse. The witnesses were not a doctors [sic] or psychologists. Neither witness was qualified to make the diagnosis, nor did they. The information was apparently gleaned from a report that some unknown person at the mental health center had made previously. It was never revealed who made the questioned diagnosis or when that diagnosis was made.

**3. Ineffective Assistance of Trial Counsel**

In the present case, no reasonable jury would have convicted Ibrahim on I.S.'s testimony alone. Therefore, the state buttressed the testimony with numerous

8

witnesses who basically vouched for his testimony because he was being treated for difficulties, including PTSD. As noted previously, counsel failed to object to the testimony of these witnesses. Frankly, without any reliable expert testimony regarding this diagnosis, Melissa Wheeler's testimony should have been restricted heavily. Other witnesses also essentially testified that they had concluded that I.S. had been sexually abused. Defense counsel failed to object to this extremely prejudicial testimony.

(Doc. 1-1, at 9, 12, 15-16). Respondent filed an Answer/Return of Writ (Doc. 6), and Petitioner filed a Reply/Traverse (Doc. 8).

Procedural Default

Respondent contends Ground Two—the Confrontation Clause claim—is procedurally defaulted due to a lack of contemporaneous objection at trial. (Doc. 6, at 12). Petitioner concedes the default, but contends he can show cause and prejudice to overcome the default (Doc. 8, at 11-16).

Petitioners must exhaust state court remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied when a petitioner has given "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). The doctrine of exhaustion "requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). A claim cannot rest on a legal theory which is separate and distinct from the one previously considered and rejected in state court. *Id.*; *see also Williams v. Wolfenberger*, 513 F. App'x 466, 468 (6th Cir. 2013) ("To satisfy this requirement, the petitioner must argue his claim under the same legal theory that was presented to the state courts.").

A procedural default occurs when a petitioner fails to fairly present his claims in a federal constitutional context to the highest state court. *O'Sullivan,* 526 U.S. at 842; *Anderson v. Harless,*

459 U.S. 4 (1982). In Ohio, "one complete round of the State's established appellate review process" means a defendant must fairly present his constitutional claims, on the record, to the trial court, the court of appeals, and the Supreme Court of Ohio on direct appeal. *See O'Sullivan,* 526 U.S. at 845; *see also Caver v. Straub,* 349 F.3d. 340, 346 (6th Cir. 2003) (claims must be raised at each level of state review). This is to "[alert] [the state court] to the fact that the prisoner[] [is] asserting claims under the United States Constitution." *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (internal quotation marks omitted) (citations omitted). In order to accomplish this, a petitioner must fairly present the substance of his federal constitutional claims to the state courts before habeas relief. *Whitings v. Burt*, 395 F.3d 602, 612 (6th Cir. 2005) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). Hence, "a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts." *Id.* (quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Further, the claim must be presented to the state courts as a federal constitutional issue, not merely as an issue arising under state law. *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

If the state argues a petitioner has procedurally defaulted his claims, the Court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

1. The Court determines whether there is a procedural rule applicable to the claim at issue, and whether the petitioner in fact failed to follow it;

2. The Court then determines whether the state courts actually enforced their procedural sanction;

3. The Court then decides whether the state's procedural forfeit is an "adequate and independent ground" on which the state can rely to foreclose federal review; and

4. Finally, in order to avoid default, the petitioner can demonstrate that there was "cause" for him to neglect the procedural rule, and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986).

Here, Petitioner did not object to the testimony at trial, and the Ohio court enforced the procedural bar by reviewing the claim for plain error. *Ibrahim*, 2015 WL 4979400, at *7 ("Because Ibrahim's trial counsel did not object to Wheeler's testimony, we apply a plain error analysis."). Ohio's contemporaneous objection rule is an independent and adequate state procedural rule sufficient to bar habeas review. *See Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001). A state appellate court's review for plain error constitutes enforcement, not waiver, of a procedural default. *See, e.g., Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012). Thus—as Petitioner concedes—the claim is defaulted and can be considered only if he can show cause and prejudice to overcome the default.[3]

*Cause & Prejudice*

As cause and prejudice, Petitioner asserts ineffective assistance of trial counsel for failure to contemporaneously object. *See* Doc. 8, at 12 ("As will be argued in the Merits section of this claim, the error does r[]ise to that level [of ineffective assistance of counsel].").

---

3. A petitioner may also overcome a procedural default by demonstrating that not excusing the default "will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). The Supreme Court has held that such an inquiry requires a petitioner "supplement[ ] a constitutional claim with a 'colorable showing of factual innocence.' " *McCleskey v. Zant,* 499 U.S. 467, 495 (1991) (quoting *Kuhlmann v. Wilson,* 477 U.S. 436, 454 (1986)). Maintaining this exception to the rule against reviewing procedurally defaulted claims serves as "an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty". *Id.* (quoting *Stone v. Powell,* 428 U.S. 465, 492-93 (1976)). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Petitioner has presented no such evidence or argument.

Demonstrating "cause" requires a petitioner to "show that 'some objective factor external to the defense' prevented the petitioner's compliance with a state procedural rule." *Bonilla v. Hurley,* 370 F.3d 494, 498 (6th Cir. 2004) (quoting *Murray v. Carrier,* 477 U.S. 478, 488 (1986)). Demonstrating prejudice requires a petitioner to show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152, 170 (1982) (emphasis in original).

Petitioner's proffered cause to excuse the default of Ground Two is intertwined with his merits argument as to Ground Three. As such, the undersigned will address both below.

### MERITS STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "dictates a highly deferential standard for evaluating state-court rulings which demands that state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005). An application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Thus, a court may grant habeas relief if the state court arrives at a conclusion that is contrary to a decision of the Supreme Court on a question of law, or if the state court decides a case differently than did the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

Ground One: Sufficiency of Evidence

In Ground One, Petitioner argues the evidence was insufficient to sustain his convictions. Specifically, he contends that "[t]he evidence was insufficient to establish that the charge[d] offenses occurred during the dates set forth in the indictment." (Doc. 1-1, at 9). Petitioner raised this claim on direct appeal (Exs. 9 & 14, Doc. 6-1, at 39-42, 122-26), and thus it is preserved for habeas review. Respondent contends the Ohio appellate court's determination on this issue was neither contrary to nor an unreasonable application of federal law. For the reasons discussed below, the undersigned recommends Ground One be denied.

The standard for a sufficiency of evidence claim is: "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Consistent with

the deference given to the trier of fact's resolution of conflicts in evidence, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson,* 443 U.S. at 326. In applying this standard, the federal court is bound by the substantive elements of the criminal offense as defined by state law. *Jackson*, 443 U.S. at 324 n.16. Furthermore, a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

As such, the reviewing court is not permitted to reweigh evidence or in any way substitute its own opinion for that of the trier of fact. *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011) (citing *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)). "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original). Due process is satisfied as long as such evidence is enough for a rational trier of fact to make a permissible inference of guilt, as opposed to a reasonable speculation that the petitioner is guilty of the charged crime. *Newman v. Metrish*, 543 F.3d 793, 796-97 (6th Cir. 2008).

Further, it is important to note the double deference applicable; first, the deference accorded to the trier of fact's verdict by *Jackson*, and second, the deference to the state court's consideration of the verdict under the AEDPA. *See Tucker v. Palmer,* 541 F.3d 652, 656 (6th Cir. 2008); *see also Brown*, 567 F.3d at 205 (finding even if a rational trier of fact could not have found petitioner guilty, the habeas court must defer to the state appellate court's sufficiency determination so long as it is reasonable). "[T]he *Jackson v. Virginia* standard is so demanding

14

that '[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)); *see also Cavazos v. Smith*, 565 U.S. 1, 2 (2011) ("Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.").

The Ohio appellate court considered this claim on direct appeal and rejected it as follows:

{¶ 29} Under the first assignment of error, Ibrahim claims that the state failed to produce sufficient evidence to prove that the unlawful sexual conduct occurred within the time frame stated in the indictment.

{¶ 30} When reviewing a challenge to the sufficiency of evidence, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 31} Ibrahim claims the state failed to present sufficient evidence to prove he committed the offenses during the time frame specified in the indictment. Ibrahim points us to the discrepancy between the time frame stated in the indictment and I.S.'s testimony: the indictment charged him with four counts of rape occurring between July 2009 and November 2009, but the child's testimony showed that the first three incidents occurred in the spring of his kindergarten year, which would make it 2008 instead of 2009.[1]

{¶ 32} "Where the exact date and time of an offense are not material elements of a crime nor essential to the validity of a conviction, the failure to prove such is of no consequence and it is sufficient to prove that the alleged offense occurred at or about the time charged." *State v. Madden,* 15 Ohio App.3d 130, 131, 472 N.E.2d 1126 (12th Dist.1984), citing *Tesca v. State,* 108 Ohio St. 287, 140 N.E. 629 (1923), and *State v. Dingus,* 26 Ohio App.2d 131, 269 N.E.2d 923 (4th Dist.1970). The precise date of a rape is not an essential element of the crime. *State v. Sellards,* 17 Ohio St.3d 169, 171, 478 N.E.2d 781 (1985).

{¶ 33} An indictment charging sexual offenses against children need not state with specificity the dates of alleged abuse; some latitude and inexactitude is allowed with respect to the timing of these offenses. *State v. Gilfillan,* 10th Dist. Franklin No. 08AP–317, 2009–Ohio–1104, ¶ 43. This is because many young victims are

simply unable to remember the dates, particularly when the repeated offenses take place over an extended period of time. *State v. Yaacov,* 8th Dist. Cuyahoga No. 86674, 2006–Ohio–5321, ¶ 17; *State v. Triplett,* 11th Dist. Ashtabula No.2013–A–0018, 2013–Ohio–5190, ¶ 44. " 'The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse.' " *Yaccov* at ¶ 17, quoting *State v. Robinette,* 5th Dist. Morrow No. CA–652, 1987 Ohio App. LEXIS 5996, *8, 1987 WL 7153 (Feb. 27, 1987).

{¶ 34} Here, the indictment charged Ibrahim with four counts of rape occurring between July 2009 and November 2009. I.S. testified to four specific rapes, but his testimony placed the first rape in the spring of his kindergarten year (2008), the second in the summer after kindergarten (2008), the third in the wintertime in his first grade (2008), and the fourth around the time when his father was moving out of the shared house.[2][4] Social worker Wilczewski testified I.S. related to him the abuse occurred when he was about seven or eight years old, which would place the rapes in 2008 and 2009. I.S.'s counselor, Wheeler, testified I.S. told her the abuse occurred when he was about five to nine years old.

{¶ 35} Ibrahim was charged with rape as defined in R.C. 2907.02(A)(1)(b). R.C. 2907.02(A)(1) states: "No person shall engage in sexual conduct with another * * * when * * * (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person." The evidence presented by the state in this case, if believed, establishes the elements of rape defined in R.C. 2907.02(A)(1)(b). The inexactness in time does not render the evidence insufficient for a violation of R.C. 2907.02(A)(1)(b) or for the furthermore "under ten" specification, because the victim, born in 2001, was under ten, whether the sexual abuse occurred in 2008 or 2009. The inexactness was not detrimental to his defense because he maintained at trial that the sexual abuse never occurred. The first assignment of error is without merit.

*Ibrahim*, 2015 WL 4979400, at *5-6.

To obtain a conviction under the charged statute, the state was required to prove the defendant engaged in sexual conduct with a person under the age of thirteen. Ohio Rev. Code § 2907.02(A)(1)(b). Further, to prove the specification, the state had to prove the victim was under ten years old. *See* Ohio Rev. Code 2907.02(B). The state court decision that the evidence was

---

4. Footnote from state appellate opinion: "It is unclear from the testimony when this incident occurred—I.S. stated he stopped going to his father's house when he was eight, thus placing the year in 2009, while I.S.'s father's new wife placed their moving from the house in November 2008."

sufficient to sustain the conviction was not contrary to or an unreasonable application of federal law. Taking the evidence in the light most favorable to the prosecution, there was evidence (in the form of the victim's testimony) to establish "four specific rapes". *Ibrahim*, 2015 WL 4979400, at *6. And there was no dispute the victim was under age ten, regardless of the discrepancies between the dates charged and dates testified to at trial.[5] Thus, there was sufficient evidence to establish each element of the charged crimes.

It is not this Court's role to sit as an additional appellate court. *See, e.g., Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988). Even more importantly, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw*, 546 U.S. at 76. Further, state courts define the elements of state crimes, and what is essential to establish each element. *See, e.g., Sanford v. Yukins*, 388 F.3d 855, 862 (6th Cir. 2002) ("What is essential to establish an element, like the question whether a given element is necessary, is a question of state law.") (quoting *Bates v. McCautry*, 934 F.2d 99, 103 (7th Cir. 1991)); *see also Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003) ("Federal courts are obligated to accept as valid a state court's interpretation of state law and rules of practice of that state.").

---

5. The appellate court summarized the evidence related to the timing of the charged offenses:

> I.S. testified to four specific rapes, but his testimony placed the first rape in the spring of his kindergarten year (2008), the second in the summer after kindergarten (2008), the third in the wintertime in his first grade (2008), and the fourth around the time when his father was moving out of the shared house. Social worker Wilczewski testified I.S. related to him the abuse occurred when he was about seven or eight years old, which would place the rapes in 2008 and 2009. I.S.'s counselor, Wheeler, testified I.S. told her the abuse occurred when he was about five to nine years old.

*Ibrahim*, 2015 WL 4979400, at *6 (footnote omitted).

17

The state court, relying on its interpretation of state law, found that "the exact date and time of an offense *are not material elements of a crime* nor essential to the validity of a conviction . . . it is sufficient to prove that the alleged offense occurred *at or about the time charged*." *Ibrahim*, 2015 WL 4979400, at *6 (emphasis added) (quoting *State v. Madden*, 15 Ohio App. 3d 130, 131 (Ohio Ct. App. 1984)). Although Petitioner undoubtedly believes the state appellate court's interpretation of Ohio law was incorrect, this court must accept the state court's interpretation of state law. *Bradshaw*, 546 U.S. at 76. Thus, to the extent Petitioner argues the state court's interpretation of state law was incorrect, that challenge may not be entertained in a habeas petition.

Petitioner further argues that "Ohio jurisprudence has established [a] liberty interest, which is, that a defendant has a right to defend charges based upon the same facts provided to the grand jury." (Doc. 8, at 6). Therefore, Petitioner argues "the up to two-year difference in time stated on the indictment and the time testified to at trial cannot simply be ignored simply [sic] because it is not a specific element of the offense." *Id.* at 8. Although framed as a sufficiency claim, Petitioner substantively presents a due process notice claim. "[T]here is no constitutional right in a state prosecution to a grand jury indictment with particular specificity." *Williams v. Haviland*, 467 F.3d 527, 534 (6th Cir. 2006). However, the Due Process Clause of the Fourteenth Amendment mandates that whatever charging method the state employs, it must give the defendant fair notice of the charges against him to permit adequate preparation of his defense. *See Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984). Here, however, Petitioner has not established lack of sufficient notice of the charges against him. *See Madden v. Tate*, 830 F.2d 194, 1987 WL 44909, at*8 (6th Cir. 1987) (unpublished) ("[f]ailure to specify the precise dates upon which the alleged crimes occurred does not deprive the defendant of his constitutional right to due process where time is not of the essence of the offense and where the dates used are not picked arbitrarily"); *United States*

*v. Barnett*, 89 F. App'x 906, 907 n.1 (6th Cir. 2003) (unless particular date is an important element of the charged offense, formal change to the date specified in the indictment (or proof or instructions that the charged crime was committed on a different date than the indictment alleges) will not impermissibly amend the indictment—so long as the evidence shows that the offense was the one charged and that it was committed on a date before the indictment and within the statute of limitations); *see also Thompson v. Bradshaw*, 2007 WL 2080454, at *28 (N.D. Ohio) ("Thompson has not established that the precise date was material to his defense or interfered with his ability to defend himself. Therefore, despite the lack of specific dates in the indictment, Thompson was not deprived due process."). The indictment here charged Petitioner with four counts of rape of a child under thirteen years of age. The State introduced evidence of four separate offenses. Furthermore, as the state court found, "[t]he inexactness in time does not render the evidence insufficient" and it "was not detrimental to his defense because he maintained at trial that the sexual abuse never occurred." *Ibrahim*, 2015 WL 4979400, at *6. Further, as noted above, the state court held that the date of a rape is not a material element of the offense. Therefore, Petitioner cannot show he was deprived of due process.

Ground Two: Confrontation Clause

In Ground Two, Petitioner asserts his Confrontation Clause rights were violated when testimonial evidence of PTSD was introduced without an opportunity to "cross-examine the source of the diagnosis". (Doc. 8, at 14). As noted above, this claim is procedurally defaulted due to lack of a contemporaneous objection, and Petitioner offers ineffective assistance of counsel as cause.

There are two layers here. First, as to the underlying Confrontation Clause claim, the Sixth Amendment states: "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ." U.S. Const. Amend. VI. Certain Sixth Amendment

principles are, without a doubt, clearly established in federal jurisprudence. *Crawford v. Washington* provides the governing standard for admission of testimonial hearsay in a criminal trial: "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." 541 U.S. 36, 68 (2004).

Second, regarding Petitioner's assertion of cause, effective assistance of trial counsel is guaranteed by the Sixth Amendment. *Strickland v. Washington,* 466 U.S. 668, 685 (1984). To prevail on an ineffective assistance of counsel claim, a petitioner must satisfy both prongs of the test set forth in *Strickland:* that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to render the trial unfair and unreliable. *Id.* at 698. *Harries v. Bell,* 417 F.3d 631, 636 (6th Cir. 2005) (citing *Strickland,* 466 U.S. at 686–692). It is not ineffective assistance of counsel to fail to raise a meritless objection. *See Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010) (counsel cannot be held constitutionally ineffective for failing to pursue a meritless claim or raise a meritless objection); *Greer v. Mitchell*, 264 F.3d 663, 675 (6th Cir. 2001) ("[C]ounsel cannot be ineffective for failure to raise an issue that lacks merit.").

The Ohio appellate court addressed Petitioner's underlying Confrontation Clause claim on plain error review:

### *Testimony of the Diagnosis and Treatment of PTSD*

{¶ 36} Under the second assignment of error, Ibrahim argues the trial court erred in allowing I.S.'s counselor Wheeler to testify about I.S.'s diagnosis and treatment of PTSD. He contends Wheeler was not qualified to make the diagnosis. He also claims the PTSD evidence is victim impact evidence and, as such, not admissible as evidence of guilt.

{¶ 37} Because Ibrahim's trial counsel did not object to Wheeler's testimony, we apply a plain error analysis. Plain error exists only if the outcome of the trial clearly would have been otherwise but for the error. *State v. Harrison,* 122 Ohio St.3d 512, 2009–Ohio–3547, 912 N.E.2d 1106, ¶ 61. Notice of plain error is to be taken " 'under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *Id.,* quoting *State v. Long,* 53 Ohio St.2d 91, 95, 372 N.E.2d 804 (1978).

{¶ 38} Ibrahim argues Wheeler's testimony regarding her diagnosis and treatment was a violation of *Crawford v. Washington,* 541 U.S. 36, 53–54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). In *Crawford,* the United States Supreme Court held that an admission of an out-of-court statement of a witness who does not appear at trial is prohibited by the Confrontation Clause if the statement is "testimonial," unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness.

{¶ 39} Wheeler, an independent licensed social worker with a supervisory designation, testified that she supervised five social workers and she counseled youths for a range of emotional disorders. As an independent licensed social worker, she had completed a master's degree and received two years of supervision under an independently licensed professional. She also takes 30 continuing educational hours every two years. Pursuant to R.C. 4757.26(A),[3] an independent licensed social worker such as Wheeler may diagnose and treat mental and emotional disorders. *See Bruce,* 8th Dist. Cuyahoga No. 92016, 2009–Ohio–6214, at ¶ 86 (a social worker who held a masters degree in social work and worked in the field of mental health for many years was qualified to make a mental health diagnosis and testified that the victims suffered from PTSD).

{¶ 40} Ibrahim argues that Wheeler's testimony was a violation of *Crawford* because she was testifying about someone else's diagnosis. This claim is without merit. Wheeler testified that she counseled youths for depression, trauma, adjustment disorders, and anxiety. She used cognitive, trauma-focused, or dialectical behavioral therapy to treat the patients. At the time of trial, Wheeler had been treating I.S. for a year for "reported past sexual abuse." After explaining how PTSD was generally diagnosed, Wheeler testified that I.S. exhibited all of the symptoms, including inability to sleep, nightmares, flashbacks, attention disorder, hypervigilance, and exaggerated startled responses. Because Wheeler provided testimony of her own diagnosis and treatment of I.S. for psychological trauma for past sexual abuse reported by I.S., *Crawford* has no application here.

*Ibrahim*, 2015 WL 4979400, at *6-7. Referencing this analysis, the state court later rejected

Petitioner's ineffective assistance of counsel claim:

{¶ 44} Ibrahim claims his trial court provided ineffective assistance of counsel in not objecting to social workers Wheeler's . . . testimony. * * *

{¶ 45} We have already addressed Wheeler's testimony in the foregoing.

*Id.* at *8.

21

The Sixth Circuit recently clarified that a state court's plain error review can be entitled to AEDPA deference "if it 'conducts any reasoned elaboration of an issue under federal law.'". *Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017) (quoting *Fleming v. Metrish*, 556 F.3d 520, 531 (6th Cir. 2009). Here, the Ohio appellate court did just that, and held there was no *Crawford* violation because "Wheeler provided testimony of her own diagnosis and treatment of I.S. for psychological trauma for past sexual abuse". *Ibrahim*, 2015 WL 4979400, at *7.

To this Court, Petitioner argues, as he did to the state court, that Wheeler was not qualified to diagnose PTSD, and thus counsel should have objected that this testimony violated Petitioner's confrontation rights. (Doc. 8, at 15). He argues Wheeler "is not a psychologist or psychiatrist" and notes (without citation) that "[h]er training did not include the ability to recognize and diagnose post traumatic stress disorder". (Doc. 8, at 15-16). However, as the Ohio appellate court found: "Pursuant to R.C. 4757.26(A), an independent licensed social worker such as Wheeler may diagnose and treat mental and emotional disorders." *Ibrahim*, 2015 WL 4979400, at *7 (footnote omitted). Because Wheeler was qualified to make the diagnosis and "provided testimony of her own diagnosis and treatment of I.S.", *id.* at *7 (a factual finding Petitioner has not rebutted with clear and convincing evidence, *see* 28 U.S.C. § 2254(e)), the state court's determination that "*Crawford* has no application here" is neither contrary to nor an unreasonable application of clearly established federal law. Wheeler testified to her own diagnosis, and was available for cross-examination. Thus, there is no violation of the Confrontation Clause.

Therefore, Ground Two fails both on the merits, and because Petitioner cannot show cause and prejudice to overcome his default of the ground. This is so because it cannot be ineffective assistance of counsel to fail to raise a meritless objection. *See Greer*, 264 F.3d at 675; *Hoffner*, 622 F.3d at 499.

Ground Three: Ineffective Assistance of Trial Counsel

In Ground Three, Petitioner asserts his trial counsel was constitutionally ineffective for failing to object to unfairly prejudicial evidence. Petitioner raised this claim to the Ohio courts and thus it is preserved for habeas review. *See* Exs. 9 & 14, Doc. 6-1, at 48-53, 130-32. Specifically, Petitioner claims "the state buttressed the [victim's] testimony with numerous witnesses who basically vouched for his testimony because he was being treated for difficulties, including PTSD." (Doc. 1-1, at 15). Petitioner repeats his argument that counsel should have objected to Wheeler's testimony, and contends counsel should also have objected to testimony from Robert Wilczewski and further cross-examined the victim's mother. Respondent contends the state court decision on this issue was not contrary to or an unreasonable application of federal law. For the reasons discussed below, the undersigned recommends Ground Three be denied.

As noted above, to prevail on an ineffective assistance of counsel claim, a petitioner must satisfy both prongs of the test set forth in *Strickland:* that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to render the trial unfair and unreliable. *Strickland,* 466 U.S. at 698; *Harries,* 417 F.3d at 636. To meet the deficient performance prong, counsel's representation must fall below an objective standard of reasonableness under prevailing professional norms. *Strickland,* 466 U.S. at 688. To meet the prejudice prong, there must exist a reasonable probability that, absent counsel's unprofessional errors, the results of the proceeding would have been different. *Id.* at 694. When considering the prejudice element, the focus is on whether counsel's errors undermined the reliability of and confidence in the result. *West v. Seabold,* 73 F.3d 81, 84 (6th Cir. 1996) (citing *Lockhart v. Fretwell,* 506 U.S. 364, 370 (1993)). This is a high burden:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or

adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland,* 466 U.S. at 689.

Further, habeas review of a *Strickland* claim is doubly deferential in a § 2254 proceeding. *Yarborough v. Gentry,* 540 U.S. 1, 6 (2003) (per curiam) ("Judicial review of a defense attorney[ ] . . . is . . . highly deferential—and doubly deferential when conducted through the lens of federal habeas."). This double deference arises because the *Strickland* standard is a general standard, giving a state court even more latitude to reasonably determine that a defendant has not satisfied the standard. *Knowles v. Mirzayance,* 556 U.S. 11, 123 (2009). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Richter,* 562 U.S. at 101. Accordingly, the pivotal question in any § 2254 action that presents an ineffective assistance claim, is "whether the state court's application of the *Strickland* standard was unreasonable." *Id.* at 785. For a state court to have unreasonably applied federal law, the court's ruling must be "objectively unreasonable" such that it was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. *Harrington*, 562 U.S. at 103. That means if fair minds could disagree over whether the state court erred, Petitioner is not entitled to relief.

The state appellate court explained the legal standard and described Petitioner's claims:

{¶ 43} Under the third assignment of error, Ibrahim argues his trial counsel provided ineffective assistance of counsel. In order to establish a claim of ineffective assistance of counsel, appellant must prove (1) his counsel was deficient

in some aspect of his representation, and (2) there is a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In Ohio, every properly licensed attorney is presumed to be competent and, therefore, a defendant claiming ineffective assistance of counsel bears the burden of proof. *State v. Smith,* 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Counsel's performance will not be deemed ineffective unless and until the performance is proven to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. *State v. Iacona,* 93 Ohio St.3d 83, 105, 752 N.E.2d 937 (2001). Decisions on strategy and trial tactics are generally granted wide latitude of professional judgment, and it is not the duty of a reviewing court to analyze the trial counsel's legal tactics and maneuvers. *State v. Gau,* 11th Dist. Ashtabula No.2005–A–0082, 2006–Ohio–6531, ¶ 35.

{¶ 44} Ibrahim claims his trial court provided ineffective assistance of counsel in not objecting to social workers Wheeler's and Wilczewski's testimony. He also claims his trial counsel should have impeached I.S.'s mother's credibility by cross-examining her about a physical examination of I.S. that she alleged was conducted but actually never occurred [sic].

*Ibrahim*, 2015 WL 4979400, at *8.

The court then rejected Petitioner's first claim regarding Wheeler's testimony:

{¶ 45} We have already addressed Wheeler's testimony in the foregoing. Regarding the testimony of Wilczewski, a social worker from the county children services, Ibrahim claims Wilczewski improperly testified that the case was considered "substantiated" by the agency.

*Id.*

First, for the reasons discussed above in Ground Two, Petitioner has not shown the state court determination regarding counsel's lack of objection to Wheeler's testimony regarding a PTSD diagnosis was contrary to, or an unreasonable application of, federal law. Further, Petitioner's argument that Wheeler's testimony was victim-impact testimony and violated Ohio law is not a cognizable claim in these proceedings. *See Hicks v. Collins*, 384 F.3d 204, 222 (6th Cir. 2004) (limitation on victim impact evidence "is an Ohio rule of procedure rather than a constitutional argument" and therefore "provides no habeas relief").

Second, the state court addressed Petitioner's claim about Wilczewski's testimony:

25

{¶ 46} Ibrahim misrepresents the record. Wilczewski testified that there are three types of case depositions his agency would make after an allegation of abuse: "substantiated," where the agency had conclusive proof of abuse, "indicated," where there were some suspicions or concerns based on the statements of witnesses or the child victim, or "unsubstantiated." Wilczewski testified that the agency's disposition in this case was that the sexual abuse was "indicated." A social worker's testimony that the allegation of sexual abuse is determined to be "indicated" by the children services is admissible, because the agency's disposition is not considered testimony regarding veracity. *State v. Whitfield,* 8th Dist. Cuyahoga No. 89570, 2008–Ohio–1090, ¶ 19, citing *State v. Smelcer,* 89 Ohio App.3d 115, 623 N.E.2d 1219 (8th Dist.1993). *See also State v. Jackson,* 8th Dist. Cuyahoga No. 92531, 2010–Ohio–3080, ¶ 17.

*Ibrahim*, 2015 WL 4979400, at *8.

Petitioner asserts counsel should have objected to Wilczewski's testimony that his agency found "indicated sexual abuse."[6] However, the state court, relying on state law, found that "[a] social worker's testimony that the allegation of sexual abuse is determined to be 'indicated' by the children services is admissible, because the agency's disposition is not considered testimony regarding veracity." *Ibrahim*, 2015 WL 4979400, at *8. Again, as noted above, counsel cannot be ineffective for failing to raise meritless objections. *See Greer*, 264 F.3d at 675; *Hoffner*, 622 F.3d at 499. Thus, the state court's determination on this point is not contrary to nor an unreasonable application of *Strickland*.

Third, Petitioner argues counsel was ineffective for failing to cross-examine the victim's mother about a physical examination of the victim. In his Petition, he contends "there was no evidence in any record of this examination being conducted" and "[c]learly, this examination did

---

6. In his Petition, Petitioner repeats his misstatement of the record that "Wilczewski testified that the case was substantiated" meaning "that his agency had determined there was 'conclusive proof' that Ibrahim had committed the offense." (Doc. 1-1, at 20) (citing Tr. 741). In fact, as the state court pointed out, Wilczewski actually testified that the finding was "indicated sexual abuse". (Tr. 741, Doc. 6-6, at 17); *Ibrahim*, 2015 WL 4979400, at *8. In his Traverse, Petitioner corrects the factual error, but contends there should have been an objection to this testimony. (Doc. 8, at 22).

not occur." (Doc. 1-1, at 20). Petitioner repeats this claim, with identical language, in his Traverse.

*See* Doc. 8, at 22. But this, as the state court pointed out, "misrepresents the record":

> {¶ 47} Ibrahim also claims his trial counsel provided ineffective assistance in failing to cross-examine I.S.'s mother regarding a physical examination of I.S. she alleged to have taken place but in fact never occurred. Again, this claim misrepresents the record.
>
> {¶ 48} Our review of the trial transcript reflects that I.S .'s mother testified that she and her son were interviewed separately after her report of sexual abuse and she believed her son also had a physical examination. After she alluded to the physical examination in her testimony, the trial court immediately conducted a hearing outside the jury's presence. At this hearing, she explained that she and her son met at The Nord Center and were interviewed by the detectives separately, and then a physical examination of her son was conducted. She was not present at the physical examination and was only told that they were going to position I.S. in different physical positions to look for evidence of anal penetration in his rectum. Under questioning by the defense, she stated that she was told about the conclusion drawn from the physical examination but was not given a written report.
>
> {¶ 49} Apparently, neither the prosecutor nor the defense was aware of such a physical examination. When I.S.'s mother resumed testifying before the jury, no further questions were asked regarding the physical examination. Later in the day, again outside of the jury's presence, the trial court learned that the prosecutor just received a report from The Nord Center regarding the physical examination alluded to and the report was immediately turned over to the defense. The report apparently included some statements from I.S.'s mother that were somewhat inconsistent with I.S.'s account of the abuse. The defense counsel asked the trial court for permission to use those statements to impeach I.S.'s mother. The trial court denied the request. Based on this record, we do not find deficient representation as claimed by appellant.

*Ibrahim*, 2015 WL 4979400, at *9.

At trial, immediately after the victim's mother alluded to a physical examination, the trial court held a hearing outside the presence of the jury, and no further questions were asked regarding the examination in front of the jury. *Id.* Petitioner argues counsel "failed to cross-examine Marissa Samara about an alleged physical examination that had been conducted by the NORD center" (Doc. 1-1, at 20; Doc. 8, at 20), seemingly arguing trial counsel should have cross-examined Ms. Samara about whether the examination actually occurred. However, the only testimony the jury

27

heard was that Ms. Samara believed an examination was performed, and, as the Ohio appellate court found, an examination *was* performed. *Ibrahim*, 2015 WL 4979400, at *9. The report of the examination was not admitted into evidence and no further questions were asked about the examination and it is thus unclear how Petitioner contends his counsel was defective in his cross-examination. The undersigned finds the state court's application of *Strickland* to these facts is neither contrary to, nor an unreasonable application of federal law.

<u>Evidentiary Hearing Request</u>

In his Petition, Petitioner requests, without elaboration, that the court "[c]onduct an evidentiary hearing at which proof may be offered concerning the allegations of this petition". (Doc. 1-1, at 21). Where a petitioner "never specifie[s] what could be discovered through an evidentiary hearing" or where his claims are "either barred from review or without merit," a district court need not hold an evidentiary hearing. *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001). Nor is "an evidentiary hearing . . . required on issues that can be resolved by reference to the state court record." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (quoting *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998)). Because "the record refutes the [petitioner's] factual allegations or otherwise precludes habeas relief, [the] district court is not required to hold an evidentiary hearing." *Id.* at 465-66As such, the undersigned recommends Petitioner's request for an evidentiary hearing be denied.

## CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the Court recommends the Petition be DENIED. Ground Two is procedurally defaulted and fails on the merits under AEDPA review. Grounds One and Three fail on the merits under AEDPA review.

s/James R. Knepp, II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).